IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATIONAL PUBLIC RADIO, INC.**, <br>    1111 N. Capitol St. NE <br>    Washington, D.C. 20002 <br><br>    **Plaintiff**, <br><br>    v. <br><br> **HON. GLENN L. KLAVANS**, <br>    8 Church Circle <br>    Annapolis, MD 21401 <br><br> **HON. FRED S. HECKER,** <br>    Courthouse Square, 200 Willis Street, <br>    Westminster, MD 21157 <br><br>    **Defendants**. | Civil Action No. __21-cv-2247__ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff National Public Radio, Inc. ("NPR"), by its undersigned attorneys, alleges as follows:

**NATURE OF ACTION**

1.  In this action, NPR seeks to protect its constitutional right to publish lawfully obtained recordings from one of the most significant criminal proceedings in Maryland history: the trial of Jarrod Ramos, who murdered five journalists in the offices of the *Capital Gazette*.

2.  NPR has been forced to bring this action because Maryland law forbids anyone, including the press, from broadcasting lawfully-obtained official court recordings of state criminal court proceedings, and further provides that violators may be held in contempt of court (the "Broadcast Ban"). Md. Code Ann., Crim. Proc. § 1-201(a), (c).

3.      The Broadcast Ban is unconstitutional under the First and Fourteenth Amendments to the United States Constitution because it punishes the broadcasting of lawfully-obtained official court records, which are available to the general public.  The United States Supreme Court has long and consistently held that government restrictions on the publication of lawfully-obtained truthful information on matters of public concern are subject to the most intense judicial scrutiny.  *See Fla. Star v. B.J.F.*, 491 U.S. 524 (1989); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979); *Cox Broad. Corp. v. Cohn*, 420 U.S. 469 (1975).

4.      Following that clear line of Supreme Court case law, the U.S. Court of Appeals for the Fourth Circuit recently held that the Broadcast Ban is subject to strict scrutiny because it penalizes broadcasting "information released to the public in official court records." *Soderberg v. Carrion*, 999 F.3d 962, 964 (4th Cir. 2021).

5.      Under the strict scrutiny standard, there is no compelling government interest that would justify the Broadcast Ban, and even if there were, the Broadcast Ban is not narrowly tailored to serve that government interest.  Its burden on speech is significant and wholly unjustified.

6.      Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201, NPR seeks a declaration that the Broadcast Ban is unconstitutional as it applies to NPR's publishing of excerpts from lawfully-obtained audio recordings of criminal proceedings in *State of Maryland v. Jarrod Ramos*, Case No. C-02-CR-18-001515, as well as a preliminary and permanent injunction enjoining Defendants from enforcing the Broadcast Ban against it.

## PARTIES

7.      Plaintiff NPR is a non-profit multimedia organization organized under the laws of the District of Columbia with its principal place of business in Washington, D.C.  It is the

leading provider of non-commercial news, information and entertainment programming to the American public.  NPR's fact-based, independent journalism helps the public stay on top of breaking news, follow the most critical stories of the day, and track complex issues over the long term.  NPR reaches approximately sixty million people on broadcast radio, podcasts, NPR apps, NPR.org, and YouTube video content each week.  NPR distributes its radio broadcasts through more than 1,000 non-commercial, independently operated radio stations, licensed to more than 250 NPR members and numerous other NPR-affiliated entities.

8. Defendant Hon. Glenn L. Klavans is the Administrative Judge of the Circuit Court for Anne Arundel County.  Judge Klavans is responsible for handling contempt proceedings under the Broadcast Ban.  He is sued in his official capacity.

9. Defendant Hon. Fred S. Hecker is the Administrative Judge for the Fifth Judicial Circuit, which includes Anne Arundel County.  Judge Hecker is responsible for handling contempt proceedings under the Broadcast Ban.  He is sued in his official capacity.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it presents a federal question under the United States Constitution.

11. This Court also has jurisdiction to declare the legal rights and obligations of the parties pursuant to 28 U.S.C. § 2201 because the action presents an actual case or controversy.

12. Venue is proper in this Court under 28 U.S.C. § 1391 because it involves judges of the State of Maryland and the constitutionality of the application of one of the State's statutes.

## FACTUAL ALLEGATIONS

**Official Court Recordings in Maryland**

13. The Maryland Rules regarding Court Administration set forth a broad requirement

mandating the official recording of state trial court proceedings "verbatim in their entirety." *See* Md. Rule 16-502 (requiring electronic recordings of district court proceedings); Md. Rule 16-503 (same for circuit courts). These Rules apply to "[a]ll trials, hearings, testimony, and other judicial proceedings" that are "held either in a courtroom or by remote electronic means." Md. Rule 16-502.

14. Members of the public have the right to obtain copies of the recordings made pursuant to Rules 16-502 and 16-503, save for limited exceptions that are not relevant to this action. Md. Rule 16-504(h)(1) (mandating public access and noting certain limited exceptions); *id.* 16-504 (h)(3) (noting limited exceptions). Specifically, Rule 16-504(h)(1) provides:

> Except (A) for proceedings closed pursuant to law, (B) as otherwise provided in this Rule, or (C) as ordered by the court, the authorized custodian of an audio recording shall make a copy of the audio recording or, if practicable, the audio portion of an audio-video recording, available to any person upon written request and, unless waived by the court, upon payment of the reasonable costs of making the copy.

15. Rule 16-504(h)(1) thus provides a right for any member of the public, including members of the press, to obtain official recordings of state court proceedings.

**The Challenged Ban on Broadcasting Criminal Proceedings**

16. Section 1-201 of the Criminal Procedure Article of the Maryland Code bans the recording or broadcasting of criminal matters held in a trial court or before a grand jury. It reads as follows:

> **§ 1-201. Recording or broadcasting criminal proceedings**
>
> **(a) Prohibited. --**
>
> **(1)** Except as provided in subsection (b) of this section, a person may not record or broadcast any criminal matter, including a trial, hearing, motion, or argument, that is held in trial court or before a grand jury.
>
> **(2)** This prohibition applies to the use of television, radio, and

>> photographic or recording equipment.
>
> **(b) Exceptions. --** Subsection (a) of this section does not apply to the use of electronic or photographic equipment approved by the court:
>
>> **(1)** to take the testimony of a child victim under § 11-303 of this article; or
>>
>> **(2)** to perpetuate a court record.
>
> **(c) Penalty. --** A person who violates this section may be held in contempt of court.

Md. Code Ann., Crim. Proc. § 1-201.[1]

17. As relevant to this action, this provision forbids anyone, including the press, from broadcasting official court recordings of state criminal court proceedings that were lawfully obtained from the court itself pursuant to Rule 16-504(h)(1).

18. The Broadcast Ban provides that violators may be held in contempt of court. Md. Code Ann., Crim. Proc. § 1-201(a) ("[A] person may not . . . broadcast any criminal matter, including a trial, hearing, motion, or argument, that is held in trial court . . . ."); *id.* § 1-201(c) ("A person who violates this section may be held in contempt of court.").

19. The Broadcast Ban therefore punishes the dissemination of recordings of criminal court proceedings that the State itself distributes and makes publicly available.

20. Although the Broadcast Ban prohibits the broadcasting of lawfully-obtained recordings of *criminal trial court* proceedings, "[p]eople are free . . . to broadcast official court recordings of state civil proceedings, as well as recordings of state appellate proceedings in both civil and criminal cases." *Soderberg*, 999 F.3d at 965.

---

[1] The Maryland General Assembly enacted the Broadcast Ban in 1981, as article 27, section 467B of the Maryland Code, and it was re-codified in 2001 "without substantive change" in Section 1-201. *Soderberg*, 999 F.3d at 964.

**The *Capital Gazette* Shooting**

21.     On June 28, 2018, Jarrod Ramos entered the offices of the *Capital Gazette* newspaper in Annapolis, Maryland, and murdered five journalists.

22.     According to the Pulitzer Prize Board, which issued a Special Citation in 2009 "to honor the journalists, staff and editorial board of the Capital Gazette," the shooting was "the largest killing of journalists in U.S. history."  *See* https://www.pulitzer.org/winners/capital-gazette-annapolis-md.

23.     The State subsequently charged Ramos with five counts of murder, one count of attempted murder, six counts of assault, and eleven counts of illegal use of a firearm.

24.     Ramos pleaded guilty but not criminally responsible, and after a two-week trial in July 2021, a jury rejected that mental illness plea.

25.     Ramos is presently scheduled to be sentenced on September 28, 2021.

**NPR's Reporting**

26.     NPR publishes its news reports via radio, podcasts, apps, and its website, primarily through audio storytelling.

27.      The NPR podcast, *Embedded*, provides deep-dive coverage of stories that have made news.  Its host, Kelly McEvers, is a two-time Peabody Award-winning journalist and former host of NPR's popular, longstanding news radio program, *All Things Considered*.

28.     NPR intends to publish excerpts from audio recordings of the trial court proceedings in *State v. Ramos*, which NPR lawfully obtained pursuant to Rule 16-504(h)(1), in a upcoming episode of *Embedded* and may also publish excerpts of the recordings in its radio broadcast journalism.

29.     An upcoming episode of *Embedded* will provide in-depth coverage of Ramos's brutal crime and subsequent trial.  NPR is currently scheduled to release this *Embedded* episode on or after September 30, 2021, after Ramos is currently scheduled for sentencing.

30.     The Broadcast Ban prohibits NPR from publishing excerpts from lawfully-obtained, publicly available, state-mandated, and state-provided audio recordings of Ramos's trial court proceedings.  NPR therefore finds itself in the untenable position of either using the recordings in its coverage while facing the risk of being held in contempt of court, or refraining from using the recordings solely out of fear that it, or one of its journalists, may be held in contempt of court.

**The *Soderberg v. Carrion* Litigation**

31.     The U.S. Court of Appeals for the Fourth Circuit recently addressed a challenge to the Broadcast Ban that is nearly identical to the one NPR brings here.  The Fourth Circuit vacated the District Court's dismissal of the claim, concluding that the District Court had erroneously applied intermediate scrutiny, and remanded the case for the District Court to apply strict scrutiny.  *Soderberg*, 999 F.2d at 969-70 (citing *Cox*, 420 U.S. 469 and *Daily Mail*, 443 U.S. 97).  The Fourth Circuit explained that the District Court's ruling "erroneously treated the Broadcast Ban as a content-neutral time, place, and manner regulation and thus subjected it to intermediate scrutiny." *Id.* at 970.  The *Soderberg* case remains pending on remand.

**NPR's Letter to the Office of the Maryland Attorney General**

32.     On August 23, 2021, in an effort to avoid this very lawsuit, NPR submitted a letter, through counsel, to the Office of the Maryland Attorney General to explain that "NPR intends to use excerpts from a lawfully-obtained audio recording of trial proceedings from *State of Maryland v. Jarrod Ramos*, Case No. C-02-CR-18-001515," and to "respectfully request that the State commit not to seek sanctions against NPR for this reporting in the public interest."  A

true and correct copy of NPR's letter is attached hereto as Exhibit A.

33. NPR's letter further stated:

In [*Soderberg*], your office asserted that Section 1-201 "is moribund" because "there has never been a § 1-201 contempt proceeding against *anyone*." State's Mem. in Supp. of its Mot. to Dismiss at 8-11, *Soderberg v. Pierson*, No. 19-cv-1559-RDB (D. Md. July 18, 2019), Dkt. 23-1 (emphasis in original). Indeed, your office argued that those plaintiffs could not even *challenge* the law in court because "[t]he supposition that, after 38 years, these plaintiffs will be the first-ever alleged contemnors in a § 1-201 contempt proceeding is mere speculation." *Id.* at 11. The State has therefore already recognized that while Section 1-201 technically remains on the books, it no longer has any force or effect.

34. NPR requested a response from the Office of the Maryland Attorney General by Thursday, August 26, 2021. At the Attorney General's request, NPR agreed to an extension to await a response on Tuesday, August 31, 2021.

35. On Tuesday, August 31, 2021, the Attorney General's Office responded by letter, a true and correct copy of which is attached hereto as Exhibit B. The Attorney General's Office refused to commit not to enforce the Broadcast Ban against NPR for publishing the recordings of *State v. Ramos*, stating that "[i]t would not be appropriate for the State to commit in advance to not take enforcement action for a hypothetical violation of the law that has not yet occurred," and that "the Circuit Court for Anne Arundel County cannot opine on the prospective application of the law to NPR's intention to broadcast the *Ramos* audio recordings." Ex. B at 1-2.

36. Because of the Office of the Maryland Attorney General's position as expressed in its letter, NPR remains concerned that it may be subject to contempt proceedings under Section 1-201 and therefore requires the protection of this Court.

37. The Broadcast Ban imposes a substantial and unconstitutional burden on NPR's ability to freely report the news and convey stories to its listeners by way of its audio journalism. It requires NPR to choose between publishing lawfully-obtained criminal trial court recordings while risking being held in contempt of court, or to refrain from publishing lawfully-obtained

8

criminal trial court recordings for fear of being held in contempt.  The Broadcast Ban therefore creates a chilling effect on journalism that violates the First Amendment.

## COUNT I

### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

38. NPR incorporates the previous paragraphs as if fully set forth herein.

39. The First Amendment prohibits the government from "abridging the freedom of speech, or of the press." U.S. Const. amend. I.

40. Under the First Amendment, if the press "lawfully obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order." *Daily Mail*, 443 U.S. at 103, 105-106.  It is unconstitutional for the government to impose punishment based on the publishing or broadcasting of material "contained in official court records open to public inspection." *Cox*, 420 U.S. at 495-96.

41. In *Soderberg*, the Fourth Circuit recently held that Maryland's ban on broadcasting lawfully-obtained recordings of trial court criminal proceedings "is properly assessed as a penal sanction for publishing information released to the public in official court records" and is accordingly "subject to strict scrutiny under the Supreme Court's decisions."  999 F.3d at 964 (citing *Cox*, 420 U.S. 469 and *Daily Mail*, 443 U.S. 97).

42. There is no conceivable "state interest of the highest order" that could justify Maryland's ban on broadcasting lawfully-obtained recordings of trial court criminal proceedings.

43. The Broadcast Ban cannot withstand strict scrutiny because this provision is not necessary to serve a compelling governmental interest, is not narrowly tailored to achieve that interest, and is far from the least restrictive means of achieving any state interest whatsoever.

44. The Broadcast Ban unconstitutionally chills NPR's speech.

45. Because the Broadcast Ban provides that a person who broadcasts lawfully-obtained recordings of trial court criminal proceedings may be held in contempt of court, it additionally violates the bedrock First Amendment protections against prior restraints.

46. Pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983, NPR seeks a declaration that the Broadcast Ban is unconstitutional as it applies to NPR's publishing of excerpts from lawfully-obtained audio recordings of criminal proceedings in *State v. Ramos*.

47. NPR further seeks both a preliminary and permanent injunction enjoining Defendants and their agents from enforcing the Broadcast Ban against NPR or its journalists.

## PRAYER FOR RELIEF

WHEREFORE, NPR respectfully requests that this Honorable Court:

A. Declare Section 1-201 of the Criminal Procedure Article of the Maryland Code unconstitutional under the First and Fourteenth Amendments to the United States Constitution, as it applies to NPR's publishing of excerpts from lawfully-obtained audio recordings of the trial court proceedings in *State v. Ramos*;

B. Enter a preliminary injunction enjoining Defendants and their agents from enforcing Section 1-201, as it applies to NPR's publishing of excerpts from lawfully-obtained audio recordings of the trial court proceedings in *State v. Ramos*;

C. Enter a permanent injunction enjoining Defendants and their agents from enforcing Section 1-201, as it applies to NPR's publishing of excerpts from lawfully-obtained audio recordings of the trial court proceedings in *State v. Ramos*;

D. Award NPR its reasonable attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988; and

E. Grant NPR such other relief as the Court deems just and proper.

Dated: September 1, 2021

Respectfully submitted,

BALLARD SPAHR LLP

By:  */s/ Charles D. Tobin*
Charles D. Tobin (Bar No. 15919)
Maxwell S. Mishkin (Bar No. 20650)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: 202.661.2200 | Fax: 202.661.2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

Leslie Minora (*pro hac vice* forthcoming)
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Tel: 215.665.8500 | Fax: 215.864.8999
minoral@ballardspahr.com

*Attorneys for National Public Radio, Inc.*