# EXHIBIT 1

### Rules Order

This Court having considered the proposed new Maryland Rules 815 (Procedure in Certified Cases From Court of Special Appeals) and 1015 (Certified Cases From the Court of Special Appeals to the Court of Appeals) at an open meeting, notice of which was posted as prescribed by law, it is this 10th day of November, 1980

ORDERED, by the Court of Appeals of Maryland, that new Maryland Rules 815 (Procedure in Certified Cases From Court of Special Appeals) and 1015 (Certified Cases From the Court of Special Appeals to the Court of Appeals) be, and they are hereby adopted in the form attached hereto; and it is further

ORDERED that the new Rules shall be effective January 1, 1981, and that a copy of this Order be published in the next issue of the Maryland Register.

> ROBERT C. MURPHY
> MARVIN H. SMITH
> J. DUDLEY DIGGES
> JOHN C. ELDRIDGE
> HARRY A. COLE
> RITA C. DAVIDSON
> LAWRENCE F. RODOWSKY

Filed: November 10, 1980

> JAMES H. NORRIS, JR.
> Clerk
> Court of Appeals of Maryland

### Maryland Rules
### Chapter 800
### Review by the Court of Appeals

NEW Rule.

*Rule 815. Procedure in Certified Cases From Court of Special Appeals.*

*a. Docketing and Notification. When a case is certified by the Court of Special Appeals in accordance with Rule 1015, the Clerk of this Court will docket the case and notify the parties.*

*b. Determination Whether to Accept. After docketing, the certification application shall be submitted to this Court for preliminary examination to determine whether the application will be (1) accepted as submitted, (2) modified, (3) enlarged to include the entire matter if certified as to a question of law only, (4) limited to a question of law only, if certified as to the entire matter, or (5) dismissed. No brief may be filed prior to the preliminary examination of the application.*

*c. Issuance of Writ of Certiorari Upon Acceptance. If, after preliminary examination, the Court issues the writ of certiorari on its own motion, the order will direct briefs and record extracts to be filed, if not previously filed in the Court of Special Appeals, and the parties shall be so notified. Briefs and record extracts shall be filed in the manner provided in and subject to the provisions of Rules 828, 830, 831 and 832.*

### Chapter 1000
### Appeals to the Court of Special Appeals

NEW Rule.

*Rule 1015. Certification of Cases to the Court of Appeals.*

*a. Initiating Certification Procedure. This Court or a panel of not less than three judges to which a case shall have been submitted for disposition may, at any time before final judgment in a case, certify a question of law or the entire matter in controversy to the Court of Appeals to be considered by that Court pursuant to the authority of the Court of Appeals to issue a writ of certiorari on its own motion.*

*b. Certification Application—Content. Whenever a question of law or the entire matter in controversy is certified to the Court of Appeals pursuant to section a, the certification application shall contain a statement of the nature of the case and the facts on which the question of law arises or the reason or reasons for certifying the entire matter. A copy of the certification application shall be forwarded to the Chief Judge of this Court simultaneously with its transmission to the Court of Appeals.*

### Rules Order

Upon consideration of the report on the proposed modification of the Maryland Canons and Rules of Judicial Ethics to permit extended media coverage of court proceedings and the recommendations submitted by the Public Awareness Committee of the Maryland Judicial Conference and the comments received from the Judiciary of Maryland, the Maryland bar and the public and after extended hearings held by this Court, it is this 10th day of November, 1980

ORDERED, by the Court of Appeals of Maryland, that commencing January 1, 1981, for the purpose of conducting an experiment of extended media coverage of trial and appellate proceedings, Canon XXXIV and Judicial Ethics Rule 11 of Maryland Rule 1231, prohibiting the use of still cameras, television cameras and sound pickup or recording devices in the courtroom, shall be suspended as to all Judges except Judges of Orphans' Courts for a period of eighteen months terminating on June 30, 1982; and it is further

ORDERED that new Rule 1209, attached hereto, be and it is hereby, adopted effective January 1, 1981, to continue in effect for the duration of the period of suspension terminating on June 30, 1982; and it is further

ORDERED that the Administrative Office of the Courts, with the assistance of the Maryland Judicial Conference, shall monitor the project during the experimental period and assess the results together with those obtained by other states. This information, combined with the perceptions and evaluations of Maryland Judges and attorneys as expressed through their respective professional organizations and the reaction of the Maryland public, will be considered by this Court at the conclusion of the trial period in evaluating the project.

ROBERT C. MURPHY
MARVIN H. SMITH—only as to television in the appellate courts and as to radio coverage in all courts. For my reasons below.
J. DUDLEY DIGGES
JOHN C. ELDRIDGE
RITA C. DAVIDSON

Judges Cole and Rodowsky declined to sign the Order.

Filed: November 10, 1980

JAMES H. NORRIS, JR.
Clerk
Court of Appeals of Maryland

Smith, J.:

I do not concur in the adoption of these Rules. I set forth my reasons.

I realize full well that it will be the unusual rather than the usual case which will be televised. This means in many counties of the State a television camera will never be seen in a courtroom. It likewise means that even in the urban areas television cameras will not be in courtrooms on a regular basis. Their presence will be the exception rather than the rule.

I have been shocked and surprised at the number of intelligent, educated, well-informed citizens in all parts of the State who do not realize that appellate courts do not hear live testimony, do not have litigants personally before them, do not impose sentences, and are but rarely involved with traffic and petty criminal cases. It is that lack of understanding on the part of the public of what really takes place in our courts which leads me to the view that by virtue of seeing on television excerpts from various trials they will believe that *all* trials are televised just as many intelligent individuals have a false impression of the appellate process. I fear that as a result of this false impression citizens will be reluctant to testify in court. The answer that they may be compelled to testify does not dispose of the matter for two reasons. The first is that a genuinely reluctant witness often makes a poor witness, as those truly experienced in the trial of cases know. The second is that when people desire to avoid testifying they often become very "forgetful" of what they have seen and heard. Thus, it may not be determined that they are potential witnesses. I see that as having a potentially adverse effect on the administration of justice.

I do not see how any period of experimentation can weigh this. The proposed questionnaires cannot reach this point. Moreover, it may take a period of time for the public to be fully conscious of the fact that trials are being televised.

I take this position with extreme reluctance. I have had the privilege on more than one occasion of seeing that which was televised in Florida trials. I regarded what I saw as in good taste and completely unobjectionable. It was only as I began to turn over in my mind what I conceive to be the effect on the public of televised trials that I perceived what I believe to be a most objectionable result from placing television cameras in courtrooms.

Obviously, the objections which I raise are not applicable to appellate courts. Thus, I have no objection to the placing of television cameras in either the Court of Appeals or the Court of Special Appeals.

Despite the restriction of the rule to the effect that the still camera photographer shall not engage in any movement or assume any body position which would be likely to call attention to himself, I submit that if his camera is not mounted on a tripod he will be raising or lowering it from time to time. If it is mounted on a tripod, then he will be moving it in the direction of the proposed object of the photograph. Either action will be but one more distracting influence in the courtroom.

## Maryland Rules
### Chapter 1200

### Court Administration

*Rule 1209. Photographing, Recording, Broadcasting or Televising in Courthouses.*

*a. Definitions.*

*1. "Extended coverage" means any recording or broadcasting of proceedings by the use of television, radio, photographic, or recording equipment by:*

(i) *the news media, or*

(ii) *by persons engaged in the preparation of educational films or recordings with the written approval of the presiding judge.*

*2. "Local administrative judge" means the county administrative judge in the Circuit Court and the district administrative judge in the District Court.*

*3. "Party" means a named litigant of record who has appeared in the proceeding.*

*4. "Proceeding" means any trial, hearing, motion, argument on appeal or other matter held in open court which the public is entitled to attend.*

*5. "Presiding judge" means a trial judge designated to preside over a proceeding which is, or is intended to be the subject of extended coverage. Where action of a presiding judge is required by this rule, and no trial judge has been designated to preside over the proceeding, presiding judge means the local administrative judge. Presiding judge in an appellate court means the Chief Judge of that Court, or the senior judge of a panel of which the Chief Judge is not a member.*

*b. General Provisions.*

*1. Extended coverage of proceedings in the trial and appellate courts of this State is permitted unless prohibited or limited in accordance with this rule.*

*2. Outside a courtroom but within a courthouse or other facility extended coverage is prohibited of persons for a judicial or grand jury proceeding, or where extended coverage is so close to a judicial or grand jury proceeding that it is likely to interfere with the proceeding or its dignity and decorum.*

*3. Possession of cameras and recordings or transmitting equipment is prohibited in all courtrooms and adjacent hallways except when required for extended coverage permitted by this rule or for media coverage not prohibited by this rule.*

*4. Nothing in this rule is intended to restrict in any way the present rights of the media to report proceedings.*

*5. Extended coverage shall be conducted so as not to interfere with the right of any person to a fair and impartial trial, and so as not to interfere with the dignity and decorum which must attend the proceedings.*

*6. No proceeding shall be delayed or continued to allow for extended coverage, nor shall the requirements of ex-*

tended coverage in any way affect legitimate motions for continuance or challenges to the judge.

7. This rule does not apply to:

(i) The use of electronic or photographic equipment approved by the court for the perpetuation of a court record;

(ii) Investiture or ceremonial proceedings, provided, however, that the local administrative judge of a trial court and the Chief Judge of an appellate court shall have complete discretion to regulate the presence and use of cameras, recorders, and broadcasting equipment at the proceedings.

c. Request for Extended Coverage.

1. All requests for extended coverage shall be made in writing to the clerk of the court at which the proceeding is to be held at least five days before the proceeding is scheduled to begin and shall specifically identify the proceeding to be covered. For good cause a court may honor a request which does not comply with the requirements of this subsection. The clerk shall promptly give notice of a request to all parties to the proceeding.

2. Where proceedings are continued other than for normal or routine recesses, weekends, or holidays, it is the responsibility of the media to make a separate request for later extended coverage.

d. Consent to Extended Coverage.

1. Extended coverage shall not be permitted in any proceeding in a trial court unless all parties to the proceeding have filed their written consent in the record, except that consent need not be obtained from a party which is a federal, state, or local government, or an agency or subdivision thereof or an individual sued or suing in his official governmental capacity.

2. Consent once given may not be withdrawn, but any party may at any time move for termination or limitation of extended coverage in accordance with this rule.

3. Consent of the parties is not required for extended coverage in appellate courts, but any party may at any time move for termination or limitation of extended coverage in accordance with this rule.

e. Restrictions on Extended Coverage.

1. Extended coverage of the testimony of a witness who is a victim in a criminal case shall be terminated or limited in accordance with the request or objection of the witness.

2. Extended coverage of all or any portion of a proceeding may be prohibited, terminated or limited, on the presiding judge's own motion or on the request of a party, witness, or juror in the proceedings, where the judge finds a reasonable probability of unfairness, danger to a person, undue embarrassment, or hinderance of proper law enforcement would result if such action were not taken. In cases involving police informants, undercover agents, relocated witnesses, and minors, and in evidentiary suppression hearings, divorce and custody proceedings, and cases involving trade secrets, a presumption of validity attends the request. This list of requests which enjoy the presumption is not exclusive, and the judge may in the exercise of his discretion find cause in comparable situations. Within the guidelines set forth in this subsection, the judge is granted broad discretion in determining whether there is cause for termination, prohibition or limitation.

3. Extended coverage is not permitted of any proceeding which is by law closed to the public, or which may be closed to the public and has been closed by the judge.

4. Extended coverage in the judicial area of a courthouse or other facility is limited to proceedings in the courtroom in the presence of the presiding judge.

5. There shall be no audio coverage of private conferences, bench conferences, and conferences at counsel tables.

f. Standards of Conduct and Technology.

1. Not more than one portable television camera (film camera—16 mm sound on film (self-blimped) or video tape electronic camera), operated by not more than one camera person, shall be permitted in any trial court proceeding. Not more than two television cameras, operated by not more than one camera person each, shall be permitted in any appellate court proceeding.

2. Not more than one still photographer, utilizing not more than two still cameras with not more than two lenses for each camera and related equipment approved by the presiding judge shall be permitted in any proceeding in a trial or appellate court.

3. Not more than one audio system for broadcast purposes shall be permitted in any proceeding in a trial or appellate court. Audio pickup shall be accomplished from existing audio systems, except that if no technically suitable audio system exists unobtrusive microphones and related wiring shall be located in places designated in advance by the presiding judge. Microphones located at the judge's bench and at counsel tables shall be equipped with temporary cutoff switches. A directional microphone may be mounted on the television or film camera, but no parabolic or similar microphones shall be used.

4. Any "pooling" arrangements among the media required by these limitations on equipment and personnel shall be the sole responsibility of the media without calling upon the presiding judge to mediate any dispute as to the appropriate media representative or equipment authorized to cover a particular proceeding. In the absence of advance media agreement on disputed equipment or personnel issues, the presiding judge shall exclude all contesting media personnel from extended coverage.

5. Only television, movie, and audio equipment which does not produce light or distracting sound shall be employed. Specifically, such photographic and audio equipment shall produce no greater sound than the equipment designated in Schedule A annexed hereto, when the same is in good working order. No artificial lighting device of any kind shall be employed in connection with the television and movie cameras.

6. Only still camera equipment which does not produce distracting sound shall be employed to cover judicial proceedings. Specifically, such still camera equipment shall produce no greater sound that an 35 mm Leica "M" series Rangefinder camera with manual film advance. No artificial lighting device of any kind shall be employed in connection with a still camera.

7. It shall be the affirmative duty of media personnel to demonstrate to the presiding judge adequately in advance of any proceeding that the equipment sought to be utilized meets the sound and light criteria enuciated herein. A failure to obtain advance judicial approval for equipment shall preclude its use in any proceedings.

8. Television or movie camera equipment shall be positioned outside the rail of the courtroom, or if there is no rail, in the area reserved for spectators, at a location approved in advance by the presiding judge. Wherever possible, recording and broadcasting equipment which is not a component part of a television camera shall be located outside the courtroom in an area approved in advance by the presiding judge.

9. A still camera photographer shall be positioned outside the rail of the courtroom or if there is no rail, in the

*area reserved for spectators, at a location approved in advance by the presiding judge. The still camera photographer shall not photograph from any other place, and shall not engage in any movement or assume any body position which would be likely to call attention to himself, or be distracting. Unless positioned in or beyond the last row of spectators' seats, or in an aisle to the outside of the spectators' seating area, the still photographer shall remain seated while photographing.*

*10. Broadcast media representatives shall not move about the courtroom while proceedings are in session, and microphones and recording equipment once positioned shall not be moved during the pendency of the proceeding.*

*11. Photographic or audio equipment shall not be placed in or removed from the courtroom except prior to commencement or after adjournment of proceedings each day, or during a recess. Neither film magazines nor still camera film or lenses shall be changed within a courtroom except during a recess in the proceeding.*

*12. With the concurrence of the local administrative judge, and before the commencement of a proceeding or during a recess, modifications and additions may be made in light sources existing in the courtroom provided such modifications or additions are installed and maintained without public expense.*

### SCHEDULE A

FILM CAMERAS—16mm Sound on Film (self-blimped)

| | | |
|---|---|---|
| 1. Cinema Products | CP-16A-R | *Sound Camera* |
| 2. Arriflex | 16mm-16BL Model | *Sound Camera* |
| 3. Frezzolini | 16mm/(LW16) | *Sound on Film Camera* |
| 4. Auricon | "Cini-Voice" | *Sound Camera* |
| 5. Auricon | "Pro-600" | *Sound Camera* |
| 6. General Camera | SS III | *Sound Camera* |
| 7. Eclair | Model ACL | *Sound Camera* |
| 8. General Camera | DGX | *Sound Camera* |
| 9. Wilcam Reflex | 16mm | *Sound Camera* |

VIDEO TAPE ELECTRONIC CAMERAS

| | | |
|---|---|---|
| 1. Ikegami | HL-77 HL-33 HL-35 HL-34 HL-51 HL-52 HL-53 HL-79 | |
| 2. RCA | TK 76 | |
| 3. Sony | DXC-1600 Trinicon | |
| 4. ASACA | ACC-2006 | |
| 5. Hitachi | SK 80 SK 90 | |
| 6. Hitachi | FP-3030 | |
| 7. Philips | LDK-25 | |
| 8. Sony BVP-200 | ENG Camera | |
| 9. Fernseh | KCN-92 | |
| 10. JVC-8800 u | ENG Camera | |
| 11. AKAI | CVC-150 VTS-150 | |
| 12. Panasonic | WV-3085 NV-3085 | |
| 13. JVC | GC-4800u | |
| 14. Sony | BVP 300 | |
| 15. NEC | MN-71 | |
| 16. Ampex | BCC-14 | |

VIDEO TAPE RECORDERS/used with Video Cameras

| | |
|---|---|
| 1. Ikegami | 3800 |
| 2. Sony | 3800 |
| 3. Sony | BVU-100 |
| 4. Ampex | VPR-20 |
| 5. Panasonic | NV-9400 |
| 6. JVC | 4400 |
| 7. Sony | 3800H |
| 8. Sony | BVU-50 |
| 9. Sony/RCA | BVH-500/TH 50 |
| 10. Fernseh | BCN-20 |

[Md. R. Doc. No. 80-24-26.]